# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELTA FRANGIBLE AMMUNITION, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 06-1477 |
| SINTERFIRE, INC., | |
| | Judge Terrence F. McVerry |
| | Magistrate Judge Francis X. Caiazza |
| Defendant, Counterclaim Plaintiff, | |
| v. | |
| DELTA FRANGIBLE AMMUNITION, LLC, | |
| Counterclaim Defendant, | |
| v. | |
| KENNETH ELLIOTT, | |
| Counterclaim Defendant, | |
| and | |
| SPRINGFIELD MUNITIONS CORP., INC., | |
| Counterclaim Defendant. | |

**REPORT AND RECOMMENDATION**

**RECOMMENDATION**

In response to a Complaint alleging patent infringement (Doc. 1) filed by Delta Frangible Ammunition, LLC ("Delta"), Defendant SinterFire, Inc. ("SinterFire") filed an Answer and Counterclaims (Doc. 6) naming Delta, Kenneth Elliott ("Elliott"), and Springfield Munitions Corporation, Inc. ("Springfield") as Counterclaim Defendants. The Counterclaim Defendants' Motion to Dismiss Counterclaims 2 and 3 (Doc. 10) is pending. In the alternative, the Defendants ask that these counterclaims be severed from the main claim for purposes of trial. Because the court lacks subject matter jurisdiction over the counterclaims, it respectfully recommends that the Motion to Dismiss be granted.

**REPORT**

**I. BACKGROUND**

**A. THE SUBSTANCE OF THE COUNTERCLAIMS**

Acting pursuant to 28 U.S.C. §§ 1331 and 1338(a)[1], Delta, filed this action alleging patent infringement. Specifically, Delta alleges that Sinterfire infringed and continues to infringe United States Patent No. 6,074,454 (the "'454 patent") entitled "Lead-Free Frangible Bullets and Process for Making Same." Delta

---

[1] Section 1338(a) provides, in relevant part: "The district courts shall have original jurisdiction of any civil action under any act of Congress relating to patents . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases."

2

- the owner by assignment of this patent - which was applied for in 1996 and issued in June 2000 - licensed the patent to SMC, which competes with SinterFire in making, marketing, and selling frangible[2] bullets. SinterFire filed an Answer and Counterclaims, asserting subject matter jurisdiction over the Counterclaims based on 28 U.S.C. §§ 1331, 1338, 1367 and 2201.

In Counterclaim 1, naming only Delta, SinterFire seeks a declaratory judgment that the '454 patent is invalid and/or not infringed by SinterFire. This Counterclaim is not part of SinterFire's Motion to Dismiss.

Counterclaim 2 alleges trade secret misappropriation in violation of state law against Delta and Springfield.[3] This Counterclaim also names Keith Elliott, who holds multiple management roles in Delta, Springfield, INTC, and INTC USA.[4]

---

[2] The National Institute of Standards and Technology explains that frangible bullets are typically made from "sintered (formed by heat and pressure) metal powders that will break into tiny fragments." *See* "Tests Make Frangibles More Tangible," at www.nist.gov/public_affairs/techbeat/tb2006_0608.htm#bullet. This ammunition is designed to disintegrate on impact with hard surfaces, minimizing the risk of ricochet or "splash-back" associated with other types of ammunition. Id.

[3] Springfield is a joint venture limited liability company owned by Delta, Continuous Metal Technology ("CMT") and INTC USA, a wholly owned United States subsidiary of Canadian corporation, International Non-Toxics Composite Corp. ("INTC").

[4] Even after discovery, Sinterfire is unable to identify the place of incorporation or the business location of INTC USA. Sinterfire also fails to specify what role INTC had in the proposed business venture and does not explain why INTC is not named as a Counterclaim Defendant.

SinterFire contends that Elliott, acting on behalf of INTC, met with SinterFire's officers in August and October 2004 to explore a proposed business venture that would have combined the assets of SinterFire, Delta, and International Cartridge Company ("ICC"). According to SinterFire, following Elliott's execution of a nondisclosure agreement on behalf of INTC, he was allowed access to unidentified information allegedly constituting "trade secrets" within the meaning of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. §§ 5301 - 5308. SinterFire ultimately declined to join the venture.

SinterFire states that after it withdrew from the joint venture discussions, Elliott disclosed its unspecified trade secrets to Delta and other competitors who, in 2006, entered into a different venture operating as Springfield. Springfield is owned by Delta, CMT, and INTC USA. According to SinterFire, Springfield, Delta and/or Elliott breached a duty of confidentiality and nondisclosure owed to SinterFire, causing it to suffer substantial economic injury.

Counterclaim 3 names Elliott only, alleging that he breached and continues to breach the 2004 nondisclosure agreement made between INTC and SinterFire.

## II. DELTA'S CHALLENGE TO THE COURT'S JURISDICTION

Although Delta makes multiple arguments in support of its

Motion to Dismiss, the court addresses only those bearing on subject matter jurisdiction. Because the court lacks jurisdiction over Counterclaims 2 and 3 under either of the statutory provisions relied on by SinterFire, it does not reach Delta's alternate grounds for dismissal.

### A. The Applicability of 28 U.S.C. § 1367(a)

Each of the disputed counterclaims is premised on state law. SinterFire claims that this court has jurisdiction over both claims pursuant to section § 1367(a).[5] This section, which provides for supplemental federal jurisdiction over state claims, reads in pertinent part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The record shows unequivocally that neither of SinterFire's counterclaims originated in the same transaction or is based on the same facts as those underlying Delta's patent claim. The relevant patent - which necessarily made public associated trade secrets - was issued in June 2000. The breach of contract claim

---

[5] SinterFire does not base its assertion of supplemental jurisdiction on any other provision of Section 1367.

5

involves the activities of corporate entities lacking any relationship to the patent and relates to a time period well after the patent was granted. The agreement made between SinterFire and INTC (by Elliott) was not signed until 2004. It does not reference Delta or the Delta patent. Moreover, SinterFire fails to describe any trade secrets disclosed to Elliott under the agreement, and, as a consequence, has failed to establish any connection with the Delta patent. In fact, SinterFire alleges only one tie between SinterFire and Delta at the time of the nondisclosure agreement - both SinterFire and Delta sold and marketed frangible bullets.

While it may be that Sinterfire has viable state law claims against Elliott, Delta, and SMC, SinterFire has not demonstrated to the court that its counterclaims are linked to the original claim in any meaningful way.

Where there is no discernible relationship between the main claim and the two counterclaims, the court should not stretch to assert jurisdiction. Litigation of a patent infringement claim alone is complicated enough. Expanding the focus of the court, and particularly the jury, to different parties and to claims with different *prima facie* elements and disparate proof would result in chaos at trial.

In sum, nothing in the record convinces the court that there is a connection between Delta's infringement claim and

SinterFire's counterclaims sufficient to support the court's jurisdiction over the counterclaims pursuant to Section 1367(a).

### B. The Applicability of 28 U.S.C. § 1338(b)

As an alternative basis for jurisdiction, SinterFire relies on 28 U.S.C. § 1338(b). This section is a codification of the doctrine of pendent jurisdiction in the context of patent, trademark, and copyright litigation. See 13B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3582, at 317 (1990); 1 James W. Moore et al., Moore's Federal Practice ¶ 0.62[6], at 697 (1993). It vests the district courts with original jurisdiction over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the . . . patent . . . laws."  A patent claim is "substantial" if, on the basis of the pleadings, it is not frivolous or lacking in substance. *See* Waterloov Gutter Protection Systems Co., Inc. v. Absolute Gutter*, 64 F. Supp. 2d 398,* 404 (D. N.J. 1999); Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 564 F. Supp. 1358, 1373 (D. Del. 1983).

It is undisputed that Delta's claim for patent infringement and SinterFire's first Counterclaim arise under the patent laws and qualify as "substantial." It is also undisputed that the Court of Appeals for the Third Circuit has concluded that claims

alleging disclosure or misappropriation of trade secrets fall within the parameters of "unfair competition" for purposes of Section 1338(b). <u>Rohm & Haas Co. v. Advo Chemical Co.</u>, 689 F.2d 424, 429 n.4 (3d. Cir. 1982) Here, as was the case in the context of 28 U.S. C. 1367(a), the critical jurisdictional issue is whether SinterFire's Counterclaims are, in fact, "related" to the patent claims.

A claim is "related" to a patent claim within the meaning of section 1338(b) if the claims may be proved by substantially the same facts. <u>O'Brien v. Westinghouse Elec. Corp.</u>, 293 F.2d 1, 12 (3d Cir. 1961). Virtual identity of proof is not required. <u>Maternally Yours, Inc. v. Your Maternity Shop</u>, 234 F.2d 538 (2d Cir. 1956). In fact, courts have declined to read the term "related" narrowly. <u>Paine, Webber, Jackson, & Curtis, Inc. v Merrill, Lynch, Pierce, Fenner & Smith, Inc.</u> , 587 F. Supp. 1112, 1113 (D. Del. 1984).

Even applying this standard, the facts asserted in SinterFire's state law Counterclaims are not sufficiently related to Delta's patent claim to support the exercise of jurisdiction. The patent claims pose a narrowly circumscribed question: whether SinterFire has infringed or is infringing a single patent. By contrast, Sinterfire's state law claims allege misappropriation of categories of vague information allegedly disclosed years after the relevant patent was issued and not tied to the patent

in any meaningful way. This information is described as "includ[ing] but . . . not limited to the equipment processes and methods, and know-how for making bullets and ammunition, bullet and ammunition technology, information about the market for frangible lead-free bullets, bullet customer lists, ammunition customer lists, potential customers for bullets and ammunition, bullet and ammunition price information, methods of doing business, business plans, customer lists, bid formats, and training techniques." (Doc. 6 at 8). Clearly, the trial of Counterclaim 2 will require substantial evidence extending well beyond that needed to litigate the discrete patent claim.

Counterclaim 3, alleging breach of contract, is equally problematic. The nondisclosure agreement introduces new parties to the litigation and contains a forum selection clause directing that issues arising under the contract be litigated in and pursuant to the laws of the province of Ontario, Canada.[6] The

---

[6] The relevant Paragraph of the Contract reads as follows:
<u>Governing Law</u>. The laws of the Province of Ontario shall govern the validity, construction, enforcement, and interpretation of the Agreement. The parties attorn to the jurisdiction of the Province of Ontario under this Agreement.
(Doc. 6 Ex. B).
   SinterFire attempts to negate the impact of the forum selection clause by arguing that Delta "make[s] no showing that the provision applied to violations of the agreement and not solely to disputes about the meaning of the agreement. They also gloss over the ambiguity in the meaning of the word 'attorn.'" (Doc. 18 at 17). This argument ignores the fact that SinterFire was party to the non-disclosure agreement. For it to argue that it did not understand the terms of the contract it now seeks to enforce and does not know the meaning to be

prospect of determining and applying the appropriate law introduces an additional complication, needlessly inflating what already promises to be a complex piece of litigation.

Discovery directed to the issue of jurisdiction has been granted, and the connection between the Counterclaims at issue and the primary patent claim remains murky. SinterFire has had ample opportunity to clear the water, but has failed to do. The circumstances of this case are such that even if the court were able to find the patent claim and the Counterclaims "related" within the meaning of section 1338(b), it would decline to exercise jurisdiction over the Counterclaims. Ultimately, whether to exercise jurisdiction over related claims under section 1338(b) is committed to the district court's discretion. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725, (1966); Taiwan Semiconductor Mfg. Co., Ltd. v. Semiconductor Mfg. Intern. Corp., No. C-035761, 2004 WL 5212448 (N.C. Cal. April 24, 2004).

The record developed thus far shows nothing beyond the *possibility* of some overlap in the factual and legal issues raised in the state claims and the federal patent claim. Trying

---

ascribed to the word "attorn" is disingenuous. Although it is true that Black's Law Dictionary at 117 (1979), defines the term as one typically used in the landlord-tenant context. Duhaime's Legal Dictionary, a dictionary of Canadian law made available on line through the University of Miami Law Library, **http://library.law.miami.edu/defguide**, uses the term as follows: "where a person consents to ("attorns to") the jurisdiction of a court which would not have otherwise had any authority over that person."

these claims together would be a complex and protracted undertaking even for the court itself. This case, however, will be tried to a jury. Patent cases involve facts and principles with which the random person - or even the random lawyer - has had little experience. It the court's view, it would be unreasonable to require a jury to evaluate the patent claim and unravel the divergent trade secret and contract claims. Whatever economy there might be in trying these claims in the federal forum is outweighed by the likelihood of unnecessary confusion and distraction on the part of the jury.

### III. CONCLUSION

Because the court lacks jurisdiction under either of the bases asserted to consider Counterclaims 2 and 3 filed by SinterFire (Doc. 6), Delta's Motion to Dismiss those counterclaims(Doc. 10) should be granted.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by July 24, 2007. Responses to objections are due by August 3, 2007.

July 9, 2007.

11

<pre>
                                        /S/ Francis X. Caiazza
                                        Francis X. Caiazza
                                        U.S. Magistrate Judge

cc:


Counsel of Record
Via electronic mail
</pre>